IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| AMBER GRAY,<br><br>    Plaintiff,<br><br>vs.<br><br>THE UNITED STATES OF AMERICA,<br>SAMUEL ESSMA, M.D.,<br>MIDWEST ASSOCIATES<br>RADIOLOGICAL, INC.,<br>a corporation, and ALTON MEMORIAL<br>HOSPITAL, a not-for-profit corporation,<br><br>    Defendants. | CIVIL NO. 08-cv-116-JPG |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant United States of America's Motion for Summary Judgment (Doc. 55) and Memorandum in Support (Doc. 56). Plaintiff Amber Gray filed a Response (Doc. 65) to the motion and memorandum. For the following reasons, the Court grants the United States' Motion for Summary Judgment (Doc. 55).

**BACKGROUND**

**I. Standard for Summary Judgment**

The "primary purpose of summary judgment is to isolate and dispose of factually unsupported claims." *Oest v. Ill. Dep't of Corrections*, 240 F.3d 605, 610 (7th Cir. 2001). Specifically, the Federal Rules of Civil Procedure require that summary judgment be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56( c); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A fact is material only if it can affect the outcome of the suit under the applicable law.

*Oest*, 240 F.3d at 610 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 424, 248 (1986)). A factual dispute is genuine only if a reasonable jury would, based on the evidence, return a verdict for the non-moving party. *Id*. When determining whether there is a genuine issue of material fact, the Court will construe the facts and reasonable inferences in the light most favorable to the non-moving party. *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 600 (7th Cir. 2009).

      The burden of proof is first placed on the moving party to point to the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 322 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159 (1970)). For instance, if the moving party can show that the non-moving party cannot prove an essential element of the case, there can be no genuine issue of material fact because all other facts are then rendered immaterial. *Id*. at 322-323. Once the moving party has met this burden, the burden then shifts to the non-moving party. *Anderson*, 477 U.S. at 250. To prevail, the non-moving party must go beyond the pleadings to show that there is a genuine issue of material fact. *Id*.

## II. Facts

      Gray was pregnant, and Dr. Saji Jacob was her doctor. (Doc. 56-4, ¶ 2). During Gray's second trimester, Dr. Jacob ordered an ultrasound. *Id*. A sonographer performed Gray's ultrasound and filled out an ultrasound OB worksheet, which is a form used to indicate the position and status of the fetus during the ultrasound. (Doc. 56-4, ¶ 3). The sonographer's worksheet indicated that all the fetus' extremities were seen during the ultrasound, and that the fetus was normal. (Doc. 56-4, p. 3). Radiologist Dr. Samuel Essma reviewed the sonographer's work, and drafted his own report. *Id*. Dr. Essma's report concluded that "partially visualized extremities were normal" and that the ultrasound showed a "normal 22 week 3 day old fetus".

(Doc. 56-4, ¶ 5).

Dr. Jacob received the worksheet and report on the same day that the ultrasound was performed, and reviewed them to make his own determination. (Doc. 56-4, ¶ 4). Dr. Jacob checked the language on the sonographer's worksheet, which he knew indicated a normal ultrasound, against the language in Dr. Essma's report, which he also knew indicated a normal ultrasound, and determined that the ultrasound was in fact normal. (Doc. 56-4, ¶ 6). He did not believe that there were any problems with the development of the extremities or that Gray needed another ultrasound. (Doc. 56-4, ¶ 7).

Upon delivery, it was discovered that Gray's child suffered from amniotic band syndrome, which is a condition that can be diagnosed during an ultrasound. (Doc. 2, p. 3, ¶ 7). Because the doctors failed to diagnose her child, Gray was not given the opportunity to terminate her pregnancy, and she has and will continue to incur great expenses in order to treat and manage her child's disorder. *Id*.

### III. Relevant Procedural Posture

On February 21, 2008, Gray filed a Complaint (Doc. 2) in federal court for medical negligence. Specifically, Gray alleges that Dr. Jacob negligently based a finding of a normal ultrasound on the incomplete information that the extremities were only partially visible, that he failed to order subsequent ultrasounds and that he failed to timely diagnose her unborn child's amniotic band syndrome. (Doc. 2, p. 3, ¶ 6(a)-(c)). Dr. Jacob's acts are attributed to the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1), and the Federally Supported Health Centers Assistance Act, 42 U.S.C. § 201. (Doc. 56, p. 1, n. 1). The United States filed a Motion for Summary Judgment (Doc. 55) on November 17, 2008, to which Gray

filed a Response (Doc. 65).

## ANALYSIS

The issue in this case is whether the United States is entitled to judgment as a matter of law. The Court must determine whether the evidence is sufficient for a reasonable jury to find that each element of medical negligence is satisfied. If the evidence is not sufficient, summary judgment will be granted, but if the evidence is sufficient, summary judgment will be denied.

I.     **Medical Malpractice**

Medical negligence is the same cause of action as medical malpractice. *Wipf v. Kowalski*, 519 F.3d 380, 384 (7th Cir. 2008) (citing *Jinkins v. Evangelical Hosp. Corp.*, 783 N.E.2d 123, 126-127 (Ill. App. Ct. 2002)). In a medical malpractice action in Illinois, the burden of proof is on the plaintiff to prove 1) the standard of care that a physician's conduct may be measured against, 2) a negligent failure to meet the standard, and 3) an injury proximately caused by the physician's negligence. *Massey v. U.S.*, 312 F.3d 272, 280 (7th Cir. 2002) (citing *Donais v. U.S.*, 232 F.3d 595, 598 (7th Cir. 2000)). In regards to the standard of care, Illinois follows the rule that the physician must "possess and apply the knowledge, skill, and care that a reasonably well-qualified physician in the same or similar community would bring to a similar case." *Jackson v. Graham*, 753 N.E.2d 525, 532 (Ill. App. Ct. 2001) (citing *Slezak v. Girzadas*, 522 N.E.2d 132, 135 (Ill. App. Ct. 1988)). Expert testimony is required to determine the standard of care unless the physician's negligence is so apparent that it is within the common, everyday knowledge of a layperson. *Massey*, 312 F.3d at 280 (citing *Donais*, 232 F.3d at 598).

In the present case, the conduct in question was how Dr. Jacob should have interpreted the worksheet and report, and what further actions he should have taken. The Court must first

determine what standard of care is applicable to Dr. Jacob in this case. Expert testimony is required because a doctor's interpretation of medical reports is not within the common, everyday knowledge of a layperson.

Dr. Steven Klein is the expert for Gray, and was deposed by all parties' counsel. (Doc. 56-7, p. 1). During his testimony, Dr. Klein specifically stated what the standard of care was for the sonographer (Doc. 56-7, pp. 93, 99-100) and for Dr. Essma (Doc. 56-7, p. 151). Dr. Klein did not, however, specifically state what the standard of care was for Dr. Jacob. Thus, there is no explicit statement of what the standard of care is for Dr. Jacob.

## II.     Inferred Standard of Care

When an expert has not explicitly stated what the standard of care is, a court may make an inference about the standard of care based on the expert's testimony. *Jones v. Lopez*, 21 Fed. Appx. 479, 481 (7th Cir. 2001). Dr. Klein stated that the standard of care did not require Dr. Jacob to reorder an ultrasound if he knew that the language in both Dr. Essma's report and the sonographer's worksheet typically indicated a normal ultrasound. (Doc. 56-7, pp. 127-129). Additionally, Dr. Klein stated that Dr. Jacob may trust that the sonographer and Dr. Essma were truthful in their reports. (Doc. 56-7, p. 129). Based on this testimony, the inferred standard of care is that Dr. Jacob could trust the sonographer's worksheet and Dr. Essma's report if he knew the language in each indicated a normal ultrasound, and was not required to order another ultrasound. There is no additional evidence to infer any other standard of care.

## III.    Breach

Once a standard of care has been established, to prove that a physician breached that standard, it is not enough to show that the physician made a mistake or that the plaintiff suffered

harm because of the physician's mistake. *Lawrence v. Rubio*, 406 N.E.2d 946, 951 (Ill. App. Ct., 1980) (citing *Sanders v. Frost*, 251 N.E.2d 105, 107 (Ill. App. Ct. 1969)). The plaintiff must show that an injury occurred, and that such an injury does not normally occur in the typical course of events without negligence. *Id*.

There can be no doubt that Gray suffered harm because of the failure to diagnose her child's disorder. Gray was not given the chance to terminate her pregnancy, and because of this she will incur great expenses to take care of her child. In order to establish breach, however, Gray must also prove that she suffered this harm because Dr. Jacob breached the standard of care.

Dr. Jacob specifically stated that he knew the language in Dr. Essma's report was standard and that it was used to indicate that an ultrasound was normal. (Doc. 56-4, ¶ 5). This was further confirmed when Dr. Jacob pulled other reports Dr. Essma had written because those reports also included the same language to indicate a normal ultrasound. (Doc. 56-4, ¶ 8). Additionally, Dr. Jacob compared the report against the worksheet to make sure that the hands and feet were seen and the worksheet indicated that they were. (Doc. 56-4, ¶ 6). The worksheet further indicated that the ultrasound was normal. *Id*.

Based on this evidence and the applicable standard of care as stated above, this Court finds that there is no genuine issue of material fact as to whether Dr. Jacob breached the applicable standard of care. No reasonable jury could find that he did. Dr. Jacob was entitled to rely on the report and the worksheet, and was not required to order another ultrasound. Thus, the United States is entitled to summary judgment as a matter of law.

## **REMAINING CLAIMS**

Federal jurisdiction in this case rested on Count I, the Federal Tort Claims Act claim against the United States. *See* 28 U.S.C. § 1331. The Court had, and continues to have, supplemental jurisdiction over Counts II through IV under 28 U.S.C. § 1367(a) because those claims are sufficiently related to the claims on which original jurisdiction is based so as to be part of the same case or controversy. However, § 1367(c)(3) provides that a district court "may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." In deciding whether to decline jurisdiction over state law claims when no original jurisdiction claims remain pending, a district court should consider judicial economy, convenience, fairness and comity. *Wright v. Assoc. Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "[W]hen the district court dismisses all federal claims before trial, the usual and preferred course is to remand the state claims to the state court unless there are countervailing considerations." *Payne for Hicks v. Churchich*, 161 F.3d 1030, 1043 (7th Cir. 1998) (citing *Wright*, 29 F.3d at 1251). Exercising jurisdiction is only recommended in three situations: where the statute of limitations would bar refiling the action, where substantial federal judicial resources have been expended to resolve the supplemental claims and where it is obvious how the claims should be decided. *Williams Elec. Games, Inc. v. Garrity*, 479 F.3d 904, 907 (7th Cir. 2007) (citing *Wright*, 29 F.3d at 1251-52).

The Court has considered the relevant factors and finds that it is appropriate to decline to exercise supplemental jurisdiction over the remaining claims in this case. The Court firmly believes that Illinois state courts are far better equipped to hear cases that turn on the

interpretation and application of state law between citizens of Illinois. As a matter of comity and efficiency, the privilege of hearing such cases should rest with the state court system. Furthermore, it does not appear to be any less convenient or less fair for Gray to proceed in state court than in federal court. In light of 28 U.S.C. § 1367(d) and 735 ILCS 5/13-217, she will not be barred by the statute of limitations, and it is not obvious how the remaining claims should be decided. Furthermore, although this case has been pending before the Court for more than two years, discovery is not yet complete and trial is not scheduled until August 2010. Furthermore, work done in this case by the parties will not be wasted because it is likely to be useful in the state action.

For these reasons, the Court will decline to exercise jurisdiction over Gray's claims.

## CONCLUSION

For the foregoing reasons, the Court:

- **GRANTS** the United States' Motion for Summary Judgment (Doc. 55) on Count I;

- **DISMISSES** Counts II through IV **without prejudice** for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1367(c)(3); and

- **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED: April 15, 2010**

                                                          s/ J. Phil Gilbert
                                                          **J. PHIL GILBERT**
                                                          **DISTRICT JUDGE**